## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  November 3, 2016                   521379
_____

NOEMI DIAZ, as Administrator
    of the Estate of FRANLLER
    VILLANUEVA, Deceased,
                        Appellant,
        v                                    MEMORANDUM AND ORDER

STATE OF NEW YORK,
                        Respondent.
_____

Calendar Date:   September 9, 2016

Before:  McCarthy, J.P., Egan Jr., Devine, Clark and Aarons, JJ.

_____

        Rodman & Campbell, PC, New York City (Michael J. Hutter of
Powers & Santola, LLP, Albany, of counsel), for appellant.

        Eric T. Schneiderman, Attorney General, Albany (Frank Brady
of counsel), for respondent.

_____

Devine, J.

        Appeal from a judgment of the Court of Claims (Schaewe,
J.), entered September 18, 2014, upon a decision of the court in
favor of defendant.

        Franller Villanueva (hereinafter decedent) commenced this
action against defendant alleging that, as is relevant here,
State Trooper Michael Woytach used excessive force during a
pursuit of decedent in which Woytach shot decedent three times
and left him paralyzed from the neck down.  The Court of Claims
conducted a trial on the issue of liability, after which it found
that the use of force was objectively reasonable under the
circumstances presented and dismissed the claim.  This appeal

ensued.[1]

Claimant acknowledges on appeal that the shooting occurred in the course of a pursuit that was "based upon reasonable suspicion that [decedent] was engaged in criminal activity" (see People v Woods, 98 NY2d 627, 628 [2002]). That pursuit occurred during the early morning hours of July 19, 2008, when the State Police and other law enforcement agencies responded to a report that a bar patron in the Village of Endicott, Broome County was armed. It was subsequently reported that the man had left the bar on a bicycle. Decedent was the man in question and was, in fact, armed with a loaded semi-automatic pistol. After a bystander identified him as such, Woytach and another state trooper attempted to question decedent. Decedent fled on his bicycle, prompting Woytach's colleague to pursue him on foot and Woytach to do so in their patrol vehicle. Woytach eventually cut decedent off and caused him to collide with the patrol vehicle, which led to a brief foot chase.

The shooting occurred before any of the other pursuing officers could catch up, and this is where the accounts of Woytach and decedent diverge. Woytach testified that decedent produced a pistol during the foot chase and began holding it in his right hand, prompting Woytach to unholster his own sidearm and order decedent to stop or show his hands. Decedent began to turn his right shoulder and raise the pistol toward Woytach who, believing himself to be in mortal peril, opened fire and struck decedent twice in the left leg and then in the neck. Decedent fell on his stomach after the paralyzing shot to his neck, after which Woytach kicked the pistol away from decedent's right hand. In contrast, decedent testified that the pistol was secured in his waistband at all times and that it would have been suicidal for him to pull a pistol on an armed state trooper.[2] Decedent

---

[1] Decedent died during the pendency of the appeal and, upon the parties' stipulation, the administrator of his estate was substituted as claimant.

[2] Decedent's pistol was loaded and the safety was off when he was shot, but a round was not in the firing chamber. Claimant

further stated that he was turning to the left in an effort to barricade himself in his nearby residence when Woytach shot him in the back without provocation. Decedent offered no explanation as to how the pistol ended up several feet away from him, as he testified that the gun remained in his waistband when he fell and did not claim that Woytach or any other officer moved him to retrieve it.

Defendant may be held liable for injuries where an officer in its employ "used excessive force in the course of an arrest, investigatory stop or other prearraignment seizure," and those claims "are analyzed under the 4th Amendment [of the US Constitution] and its standard of objective reasonableness" (Passino v State of New York, 260 AD2d 915, 916 [1999], lv denied 93 NY2d 814 [1999]; see Plumhoff v Rickard, ___ US ___, ___, 134 S Ct 2012, 2020 [2014]; Shirvanion v State of New York, 64 AD3d 1113, 1114 [2009]). There is no question that, if the pursuing "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to" terminate the pursuit of that suspect with deadly force (Tennessee v Garner, 471 US 1, 11 [1985]; accord Brosseau v Haugen, 543 US 194, 197-198 [2004]). The Court of Claims found decedent's various accounts of what transpired to be "replete with inconsistencies and evasion," credited the testimony of Woytach that decedent displayed a pistol and tried to aim it at Woytach, and determined that the use of deadly force was objectively reasonable under those circumstances. Claimant argues that other

_____

argues that it strains credulity to believe that decedent pulled a gun on a state trooper that could not be fired without first racking the slide. Decedent had not possessed the pistol for a long period of time and, while he gave a strained explanation as to how he learned about firearms from "com[ing] across some guns" while wandering around in the woods, he also acknowledged that he had never seen his pistol fired by others or tried to fire it himself. As a result, while decedent knew by the time of trial that his loaded pistol could not have immediately been fired, his testimony was far from clear as to whether he was aware of that fact at the time of the shooting.

trial evidence cast doubt upon Woytach's account and, "[w]hen reviewing a determination after a nonjury trial, this Court independently considers the weight of the evidence and may grant whatever judgment is warranted by the record, all while deferring to the trial judge's factual findings, especially where those findings are based on credibility determinations" (Smith v State of New York, 121 AD3d 1358, 1358-1359 [2014]; see Medina v State of New York, 133 AD3d 943, 944 [2015], lv denied 27 NY3d 905 [2016]). Inasmuch as our review reveals that the credibility determinations and factual findings of the Court of Claims were supported by "a fair and reasonable interpretation of the evidence," however, we perceive no reason to disturb the judgment (Smith v State of New York, 121 AD3d at 1359 [internal quotation marks and citations omitted]).

Claimant points to the testimony of a pathologist who reviewed decedent's medical records and opined that decedent was shot from behind in the legs and was "leaning slightly forward . . . to the left" when he was subsequently shot in the neck. Woytach testified that he opened fire when decedent turned his right shoulder and began to raise his weapon, which could lead one to expect that decedent had been turning to the right when shot. That being said, decedent was still running and had just begun to twist his right shoulder when Woytach opened fire, and there is no reason to believe that his legs had also shifted direction. Decedent continued to move forward as best he could despite having been shot twice in the left leg, and only collapsed after being shot a third time in the neck. In other words, decedent was shot from behind after he moved his right shoulder and raised the gun, moved forward on a hobbled left leg and, while he was doing so, was shot again in the neck. There is nothing obviously incompatible between that sequence of events and the evidence suggesting that decedent had moved his upper body somewhat to the left by the time he was shot in the neck. Thus, after independently considering the trial evidence and according deference to the trial court's finding that Woytach was a credible witness, we agree with the Court of Claims that Woytach did not use excessive force (see Passino v State of New York, 260 AD2d at 916; see also Brothers v Akshar, 383 Fed Appx 47, 49 [2d Cir 2010]; Salim v Proulx, 93 F3d 86, 91-92 [2d Cir 1996]).

McCarthy, J.P., Egan Jr., Clark and Aarons, JJ., concur.


ORDERED that the judgment is affirmed, without costs.



ENTER:

Robert D. Mayberger
Clerk of the Court