McFadden v State of New York (2021 NY Slip Op 07040)





McFadden v State of New York


2021 NY Slip Op 07040


Decided on December 16, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 16, 2021

528432
[*1]Reginald G. McFadden, Appellant,
v
State of New York, Respondent.

Calendar Date:October 21, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Colangelo, JJ.

Reginald G. McFadden, Attica, appellant pro se.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the Court of Claims (Milano, J.), entered January 11, 2019, upon a decision of the court in favor of defendant.
Claimant, an incarcerated individual, commenced this action alleging, among other things, that correction officers used excessive force and assaulted him in three successive incidents that occurred during a single day and then interfered with his medical care. This Court previously upheld the denial of claimant's motion for partial summary judgment on the issue of liability (138 AD3d 1167 [2016], appeal dismissed 28 NY3d 947 [2016]). After trial, the Court of Claims dismissed the claim. Claimant appeals.
Correction officers are permitted to use force upon an incarcerated individual to, among other things, "prevent injury to person or property," "enforce compliance with a lawful direction" or "prevent an escape" (7 NYCRR 251-1.2 [d]; see Correction Law § 137 [5]). However, "[w]here it is necessary to use physical force, only such degree of force as is reasonably required shall be used" (7 NYCRR 251-1.2 [b]). "When reviewing a nonjury verdict, this Court has broad authority to independently review the probative weight of the evidence, but we generally defer to the trial court's credibility determinations and factual findings, as that court had the opportunity to observe the witnesses" (Barnes v State of New York, 189 AD3d 1781, 1781 [2020] [citations omitted], lv denied 37 NY3d 905 [2021]; see Diaz v State of New York, 144 AD3d 1220, 1222 [2016]).
At the beginning of trial, the Court of Claims clarified with claimant that he was asserting causes of action for excessive force and interference with medical care.[FN1] Claimant testified that five correction officers subjected him to three separate, unprovoked beatings within a half-hour time frame. He was then examined by medical staff and sent to an outside hospital. Upon his return, facility staff placed him in the special housing unit, despite an alleged Department of Corrections and Community Supervision (hereinafter DOCCS) policy requiring that he be placed in the medical unit.
Two correction officers testified that when claimant was selected for a routine pat frisk, a metal detector alerted on his groin area. They escorted him to a body orifice security scanner, which also indicated the presence of metal. The officers then escorted claimant to an infirmary exam room for a strip frisk. Both officers testified that they did not hit or assault claimant at any time before he entered the exam room, nor did they witness anyone else doing so. According to the one officer who remained in the room, claimant stripped down to his underwear but then tried to run from the room. The officer grabbed claimant. The other officer, having heard a commotion, entered the room and helped bring claimant to the floor. The second officer applied a figure four leg lock, which is taught in the DOCCS training academy as an authorized body hold to allow officers to gain [*2]compliance. Both officers testified that the use of force ended once claimant complied with orders and was placed in restraints. The first officer recovered a sharpened metal object from the floor where claimant had been lying.
A physician, who is employed by DOCCS and works in the facility where claimant was housed, testified that DOCCS policy does not require placement in the medical unit after a visit to an outside hospital unless the incarcerated individual was admitted to the hospital. On the day of the alleged assaults, claimant was seen in the emergency department but not admitted to the hospital. Thus, according to the physician's testimony, facility medical staff followed policy after claimant's return from the hospital by having him evaluated by a nurse, who consulted with a physician regarding where claimant should be placed.
"Upon our independent review of the record, and accepting the Court of Claims' credibility determinations that favored the correction officers, we conclude that claimant failed to establish that the correction officers' use of force during the incident was 'unreasonable or excessive under the circumstances or in violation of any policy or procedure of defendant'" (Barnes v State of New York, 189 AD3d at 1781-1782 [citations omitted], quoting Bush v State of New York, 57 AD3d 1066, 1067 [2008]; see Shirvanion v State of New York, 64 AD3d 1113, 1114-1115 [2009]). Similarly, considering the physician's testimony, claimant failed to prove the violation of any DOCCS medical policy or that any facility employee interfered with his medical care. We have reviewed claimant's remaining contentions and find them to be without merit.
Egan Jr., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Although claimant asserts on appeal that the Court of Claims erred by failing to address the other causes of action alleged in his claim, the court reasonably limited its decision to what claimant agreed were the issues to be tried. In any event, claimant failed to meet his burden of establishing any of the claim's other causes of action.