Galloway v State of New York (2023 NY Slip Op 00137)

Galloway v State of New York

2023 NY Slip Op 00137

Decided on January 12, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 12, 2023

534147
[*1]Antoine Galloway, Appellant,
v
State of New York, Respondent.

Calendar Date:November 17, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

The Dratch Law Firm, PC, New York City (Daniel Lebersfeld of counsel), for appellant.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondent.

McShan, J.
Appeal from a judgment of the Court of Claims (W. Brooks DeBow, J.), entered September 27, 2021, upon a decision of the court in favor of defendant.
We are familiar with the history of this matter, as it returns to this Court for a second time (194 AD3d 1151 [3d Dept 2021]). In brief, in October 2016 claimant commenced this action alleging that correction officers had assaulted him while he was incarcerated at Clinton Correctional Facility (hereinafter CCF). At the conclusion of a bench trial solely concerning the issue of liability, the Court of Claims dismissed the claim in a written decision. Claimant appealed and we reversed, determining that the Court of Claims had resolved the matter as a motion for dismissal of the claim as a matter of law pursuant to CPLR 4401 and, under that standard, a review of the evidence in the light most favorable to claimant established that defendant could properly be held liable under a theory of respondeat superior (id. at 1152). We remitted the matter to the Court of Claims to render a verdict in its capacity as the trier of fact (id. at 1154).
Upon remittal, the Court of Claims, in its capacity as the trier of fact, credited claimant's testimony but nevertheless found that the correction officers were not acting within the scope of their employment. Thus, the court held that defendant could not be held liable for the acts of the correction officers under the doctrine of respondeat superior and, accordingly, dismissed the claim. Claimant appeals.
It is well established that the doctrine of respondeat superior allows an employer to be held vicariously liable for intentional or negligent acts committed by an employee within the scope of his or her employment, provided that such acts are "generally foreseeable and a natural incident of the employment" (Judith M. v Sisters of Charity Hosp., 93 NY2d 932, 933 [1999]). In determining whether an employee was acting within the scope of his or her employment for purposes of vicarious liability, we look to several factors, including " 'the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated' (i.e., whether it was foreseeable)" (Rivera v State of New York, 34 NY3d 383, 389-390 [2019], quoting Riviello v Waldron, 47 NY2d 297, 303 [1979]). "[W]here the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment" (Riviello v Waldron, 47 NY2d at 304). As relevant here, "in cases involving a use of force, whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment" (Rivera [*2]v State of New York, 34 NY3d at 390).
"In reviewing a determination rendered after a nonjury trial, this Court independently assesses the weight of the evidence and grants judgment warranted by the record, giving due deference to the trial court's determinations of witness credibility unless such findings are contrary to a fair interpretation of the evidence" (Matter of Mary, 202 AD3d 1418, 1419 [3d Dept 2022] [internal quotation marks and citations omitted]; see McFadden v State of New York, 200 AD3d 1357, 1357 [3d Dept 2021]). Mindful that the Court of Claims credited claimant's account of the incident, we note that the underlying facts generally mirror those noted in our prior determination and we recount them briefly (see 194 AD3d at 1151).
As told by claimant, the month preceding the battery, he lodged a complaint under the Prison Rape Elimination Act (34 USC § 30301-09 [hereinafter PREA]) against Brian Poupore, a correction officer at CCF, alleging that Poupore had squeezed his testicles in the course of a pat frisk. Pursuant to the investigation process, Poupore prepared a memorandum in response to the incident directed to Ronald Wood, a correction sergeant who directly supervised Poupore. The credible evidence establishes that Poupore was aware of the PREA complaint prior to the March 2016 incident, and that Wood was also aware of that fact. Both claimant and Wood testified that claimant was directed over the facility's public address system to report for an interview. Wood stated that the interview pertained to a separate complaint that claimant had filed. According to claimant, as he proceeded to the interview, he observed several officers, including Wood and Poupore, awaiting him at the bottom of the stairs near the interview location. Poupore then directed him to put his hands on the wall so he could conduct a pat frisk. Claimant elaborated that Poupore directed him to spread his legs and, following an initial directive to "come back," gave numerous commands to continue backing up. After claimant had come back as far as he could, Poupore then punched him on the left side of his face. Claimant testified that he was then pulled to the floor and "beaten, punched, kicked, stomped and hit with [a] baton." As a result of the incident, claimant suffered multiple injuries, including a fractured right ankle. The officers, for their part, consistently testified that it was claimant who initiated the physical altercation during the pat frisk, during which he apparently shouted an expletive at Poupore and punched him in the left side of the face. According to the officers, a Level II response was called and force was utilized in an effort to subdue claimant and gain compliance.
As we noted on the prior appeal in this matter, the account of the incident satisfies the time, place and occasion factor (see 194 AD3d at 1153). Nor is there any dispute as to Poupore and the other correction officers' relation with the employer and the common nature [*3]of the actions that preceded the assault. Claimant was directed to report for an interview with Wood and, within the context of that command, was given a common directive to place his hands on the wall so that Poupore could conduct a pat frisk. Thus, disposition turns on the extent to which the assault departed from normal employment-related conduct and whether the assault itself could reasonably be anticipated (see Riviello v Waldron, 47 NY2d at 303). In this regard, we disagree with the conclusions of the Court of Claims and, therefore, reverse.
In our view, the sequence of events leading to the use of force on claimant, considered alongside the prison documents generated in the immediate aftermath, support a contrary result. Claimant was directed to proceed to an interview and, in accordance with facility procedures, was directed by Poupore to position himself for a pat frisk. After numerous directives to back up so that the pat frisk could be properly performed, Poupore then punched claimant in the face. Although claimant denied generally resisting or inflicting any blows to Poupore or the other correction officers, the incident reports for the facility noted that Poupore suffered bruising to his left cheek and had left rib pain after the altercation, and another officer involved in the incident had a swollen forehead and redness. While we are mindful that the Court of Claims credited claimant's account suggesting that he was at all times compliant and simply "trying to cover up" during the entirety of the assault, we find that the fair view of the evidence does not cleanly lend to that conclusion, as the documentary evidence that was created immediately following the incident establishes that there was some manner of resistance on claimant's part (see J. Triple S., Inc. v Aero Star Petroleum, Inc., 141 AD3d 778, 779 [3d Dept 2016]; Mazza v Fleet Bank, 16 AD3d 761, 763 [3d Dept 2005]; see also Matter of Allen v Black, 275 AD2d 207, 209 [1st Dept 2000]). In this respect, there is no dispute that the correction officers were authorized to utilize force to gain compliance with a lawful directive, such as the one directing claimant to submit to a proper pat frisk or to subdue him because he was resisting lawful commands (see Correction Law § 137 [5]; 7 NYCRR 251-1.2 [d]). Accordingly, while the force employed by Poupore and the other correction officers clearly "crosse[d] the line of sanctioned conduct," it cannot be readily divorced from the pat frisk and ensuing efforts to subdue claimant so as to render it outside of the scope of employment (Rivera v State, 34 NY3d at 391; see Siriani v State of New York, 72 Misc 3d 1211[A], *6 [Ct Cl 2021]).
Moreover, while it is our view that the correction officers' use of force was excessive, the ensuing investigations of the incident effectively condoned the conduct of the correction officers and tacitly found them to be engaged in actions that were within the scope of employment (compare Rivera v State[*4], 34 NY3d at 386). To this end, it was claimant that was found guilty of misbehavior for assaulting prison staff, and prison officials determined that the use of force was "consistent with Departmental Rules[,] and [that] the injuries received, both by staff and the involved [incarcerated individual] are accounted for." This evidence reflects that prison officials determined that the conduct of the correction officers was appropriate under the circumstances and fell within the scope of employment. Finally, in light of claimant's PREA report accusing Poupore of inappropriate contact with claimant, which preceded the incident, and Poupore's knowledge of same, it was clearly foreseeable that a tense encounter could result during further interactions between Poupore and claimant in the context of normal employment-related activities in the prison (see Sims v Bergamo, 3 NY2d 531, 534-535 [1957]; De Wald v Seidenberg, 297 NY 335, 338 [1948]; compare Dykes v McRoberts Protective Agency, 256 AD2d 2, 3 [1st Dept 1998]). Altogether, we find that the foregoing establishes by a preponderance of the evidence that the assault occurred within the scope of the correction officers' employment as a reasonably foreseeable consequence of an employment-related activity and that the verdict in this case must be reversed on the facts and the law.
Garry, P.J., Lynch, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment is reversed, on the law and the facts, without costs, and matter remitted to the Court of Claims for a determination of claimant's damages.