Silverstein v State of New York (2024 NY Slip Op 51419(U))

[*1]

Silverstein v State of New York

2024 NY Slip Op 51419(U)

Decided on October 4, 2024

Court Of Claims

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 4, 2024
Court of Claims

Scott Silverstein, Claimant,

against
The State of New York, Defendant.

Claim No. NONE

Claimant's attorney:
RICKNER PLLC
By: Stephanie Panousieris, Esq.
Defendant's attorney:
HON. LETITIA JAMES
Attorney General for the State of New York
By: Elizabeth Gavin, Assistant Attorney General

Walter Rivera, J.

Recitation:
The following papers numbered 1-3 were read and considered by the Court on movant's late claim application:
Notice of Motion, Attorney's Supporting Affirmation and Exhibits 1
Attorney's Affirmation in Opposition and Exhibit 2
Attorney's Reply Affirmation 3
Movant brings this late claim application pursuant to Court of Claims Act § 10 (6). The proposed claim alleges the following (Ex. A). 
In January 2023, during movant's incarceration at Fishkill Correctional Facility (Fishkill), movant was housed in the C-center dorm of the "Network Program," referred to as an "honor dorm" (id., ¶ 7). The honor dorm maintained a relatively peaceful environment with little conflict until early 2023 when the New York State Department of Corrections and Community [*2]Supervision (DOCCS) began housing active gang members in the honor dorm, which led to unrest and fights (id. at 9).
In the morning of January 17, 2023, the 15 to 20 residents of the honor dorm who did not have work assignments, were transferred to the gym for recreation. Between 9:00 a.m. and 9:30 a.m., movant saw two incarcerated individuals begin a physical altercation with a third incarcerated individual. The three incarcerated individuals were removed from the area by DOCCS staff. Approximately 30 minutes later, the third incarcerated individual, who had been the subject of the earlier physical altercation, returned to the gym "with an associate" and they "ran up to the gang members" and attacked them with metal chairs (id. at 15). Dozens of correction officers swarmed the gym to address the incident. The correction officers yelled for the uninvolved incarcerated individuals to stand up and face the wall with their hands up (id. at 16).
Movant, who was at a distance of approximately 50 feet from where the incident involving the metal chairs began, immediately complied with the correction officers' instructions (id. at 17) A male correction officer then grabbed movant by the shoulder and aggressively pushed movant to the left, causing movant to lose his balance (id. at 18). Movant remained calm and compliant, despite the unnecessary use of force. Seconds later, without warning, six to seven correction officers rushed movant from behind and assaulted him. Movant did not resist the "brutal assault" and pulled himself into the fetal position to protect his face and head from the blows (id. at 19). After movant was handcuffed, the correction officers continued to attack movant. When movant fell to the floor, the correction officers kneed and kicked movant in his sides. The correction officers then picked up movant and carried him to the lobby outside the gym, near the water fountains, and continued "the brutal and unprompted assault" upon movant (id. at 21). During the fast moving attack, movant heard a correction officer, who was wearing a white shirt, instruct the correction officers to "beat" movant (id. at 22). Movant believed that the white shirt indicated that the correction officer was a supervisor (id.). The correction officers heeded the supervisor's command and beat movant for an additional 15 to 20 seconds. The correction officers then lifted movant to a standing position and screamed at him. 
The correction officers escorted movant to the infirmary as they taunted and hurled threats at him and warned him that if he said one word about the incident then "things would get 'really ugly' " (id. at 24). Struggling to breathe from his injuries, movant waited approximately 45 minutes before he was examined by the nurse who asked movant what happened to him. In response to the nurse's inquiry, one of the correction officers jumped in and responded that movant was "caught in the crossfire" of the incident in the gym (id. at 25). The nurse did not conduct a full physical examination of movant. She did not have movant remove his shirt nor did she photograph the bruises that he had all over his body. The result was an incomplete injury report that did not reflect the extent of movant's serious injuries. 
Movant remained in the waiting area with at least four correction officers and approximately a dozen incarcerated individuals that were involved in the incident involving the metal chairs. Movant continued to complain of significant pain throughout his body and repeatedly requested to be seen by a doctor. Movant's requests were rebuffed. Movant began to panic and his breathing became more painful and difficult. His cuffs were excruciatingly tight. The correction officers laughed and mocked movant and asked him if he was too old for "[gang] [*3]banging?" (id. at 29). Movant was sent back to his unit without any medical treatment and directed to sign up for sick call (id. at 30). 
The following day, on January 18, 2023, at approximately 5:30 p.m., several correction officers stormed movant's unit and forced all the incarcerated individuals to go into the hallway and place their hands up against the wall. This was a near impossible task for movant due to the severity of his injuries (id. at 32); however he complied out of fear of being beaten. Movant held his hands up over his head for an excruciating 15 minutes (id. at 33). The incarcerated individuals were then forced to walk down five flights of stairs and across a yard to the messhall where they remained for 90 minutes until they were taken back to the unit. During this time movant was in pain, but he did not request assistance because he feared being beaten by the correction officers (id. at 34). 
Upon returning to the unit, the unit had been ransacked. Property was stolen, destroyed and missing. There were holes in the walls and there were broken shelves (id. at 35).
Days after the attack upon claimant on January 17, 2023, movant was called down for a non-emergency sick call. At that time, the nurse informed movant that there was no medical report in his file from January 17, 2023 (id. at 36). Movant was examined and the nurse told the monitoring correction officer that movant needed to be seen by his provider immediately. On January 25, 2023, eight days after the January 17, 2023 attack upon movant, movant received diagnostic imaging which revealed fractures to his 9th and 10th ribs (id. at 37). 
Movant alleges that the State had ample notice of the January 17, 2023 attack upon him by the correction officers and that the State failed to identify the correction officers responsible for the attack and to reprimand them for their unlawful actions (id. at 38). Movant seeks damages for the negligent and intentional conduct of the State and its employees at Fishkill who "brutally assaulted" movant and used excessive force, without cause or legal justification, which resulted in movant's injuries (id. at 2). Movant also alleges that the correction officers threatened him with retaliation and acted to cover up their wrongdoing by interfering with movant's medical assessment (id. at 5). Movant's injuries allegedly resulted from the negligence, recklessness, deliberate indifference and intentional conduct of the State and its employees in the operation, maintenance, supervision and control of DOCCS (id. at 3). Movant also alleges that the State failed to train, supervise, discipline and retain employees who are fit for employment and that the State failed to adequately investigate the claims of misconduct (id. at 5, 6). Additionally, movant alleges that his federal and state constitutional rights were violated and that his unspecified statutory rights were violated (id. at 6, 39). As a result of the alleged attack, movant has allegedly sustained physical, emotional, and psychological injuries, pain and suffering, and potentially permanent deformities (id. at 39).
Movant submits numerous exhibits in support of his late claim application (Exs. B-F). Exhibit B is a copy of the Unusual Incident Report dated March 7, 2023 regarding the incident in the gym involving numerous incarcerated individuals on January 17, 2023 and the subsequent investigation. The Unusual Incident Report notes that movant was identified as a possible participant in the gym incident and that the medical unit reported that on January 17, 2023 movant sustained "A 2 INCH LINEAR REDDENED AREA NOTED TO LEFT FRONT ABDOMINAL AREA, REDDENED AREA NEAR LEFT EAR AND A 3/4 INCH X 1 1/8 INCH REDDENED AREA TO LEFT NECK" (id. at pp 2-3). An addendum to the Unusual [*4]Incident Report notes that on February 20, 2023, movant was still complaining of pain in his torso area and was sent to an outside hospital where it was determined that he had a fracture to the right 9th and 10th ribs (id.).
Exhibit C is a to-from memorandum from Sergeant Garnot to Lieutenant Sawyer, dated January 17, 2023, regarding the gym incident that occurred on January 17, 2023 and involved numerous incarcerated individuals, the subsequent investigation, which was ongoing, the search of movant's unit due to him being identified as a possible suspect in the gym incident, and the injuries movant sustained on January 17, 2023. The memorandum notes that movant sustained "a 2 inch linear reddened area noted to left front abdominal area, reddened area near left ear and a 3/4 inch x 1 1/8 inch reddened area to left neck" (Ex. C, pp 1-2). 
Exhibit D is movant's grievance dated February 2, 2023. It alleges that on January 17, 2023 at approximately 10:00 a.m., in the gym, movant was handcuffed and beaten by a "group of correction officers and supervisors." Movant was taken to the infirmary, remained in cuffs, and complained of being in pain for seven hours. The grievance provides in pertinent part: "NO INCIDENT REPORT WAS FILED AND MY INJURY REPORT AND MEDICAL DIAGNOSIS VANISHED. I WAS THREATENED WITH VIOLENCE TO STAY QUIET" (Ex. D). 
Exhibit E consists of a witness statement from two incarcerated individuals. The first statement is signed by William Richardson and is dated January 19, 2023. Richardson's statement provides that on January 17, 2023, he saw a group of correction officers assault movant in the gym as movant yelled in pain. Richardson observed movant later that day on the unit "having difficulty moving" and "it took him a lot of effort to lift his shirt to show me his bruised torso. His back and rib area was badly bruised [sic]" (Ex. E). The following day, the unit was ransacked and the correction officers broke and took items that the incarcerated individuals were permitted to have. 
The second statement is signed by George Guadalupe and is dated February 16, 2023 (id.). Guadalupe's statement provides that on January 17, 2023, he witnessed a group of correction officers assault movant in the gym. Movant was punched and kicked repeatedly while he was handcuffed and he pleaded, to no avail, for the correction officers to stop. A supervisor told the group of correction officers to beat movant. Guadalupe observed movant handcuffed in the infirmary several hours after the incident and movant said that he had not been treated by medical for his injuries. 
Exhibit F is movant's affirmation dated January 17, 2024 [FN1]
(Ex. F). It details the events that occurred on January 17, 2023 and the injuries that movant endured. It also states that movant was interviewed by correction officers several times "about what happened"and that he told them exactly what happened to him (id. at ¶ 26). Movant was not offered any "additional medical care" and he did not believe that the assault was reported after his interviews (id.). Movant was threatened by the clinic correction officer to "shut up and not say a word" and that if movant did not stay quiet, he would "'get more'" (id. at 20). Due to the threats from several [*5]correction officers and movant's request for surveillance footage of the incident, which was not provided to him, movant did not immediately seek legal action and he remains concerned for his safety because he is still housed in Fishkill (id. at 37-42).
The State opposes movant's application on numerous grounds which are addressed in the following analysis.
Analysis
The determination of a motion for leave to file a late claim requires the Court to consider, among other relevant factors, the six factors set forth in subdivision 6 of section 10 of the Court of Claims Act: (1) whether the delay in filing the claim was excusable; (2) whether the State had notice of the essential facts constituting the claim; (3) whether the State had an opportunity to investigate the circumstances underlying the claim; (4) whether the claim appears to be meritorious; (5) whether the failure to file or serve a timely claim or serve a timely notice of intention resulted in substantial prejudice to the State; and (6) whether the movant has another available remedy. The presence or absence of any one factor is not determinative and the list of factors is not exhaustive (see Bay Terrace Coop. Section IV v New York State Employees' Retirement Sys. Policemen's & Firemen's Retirement Sys., 55 NY2d 979 [1982]).
With regard to the first factor, movant argues that he has a reasonable excuse for not timely commencing an action based upon his fear of retaliation from the correction officers who attacked him and threatened him "with violence to stay quiet" (Ex. D). Additionally, movant maintains that the correction officers continued to be employed at Fishkill while movant remained housed at Fishkill. 
The State argues that movant's purported fear of retaliation is not a reasonable excuse in the instant case because movant's fear is belied by the fact that movant filed a grievance on February 2, 2023, 16 days after the alleged attack, wherein movant asserted that he was threatened with violence to stay quiet and an investigation was conducted of movant's allegations (id.; Ex. 1). Every correction officer involved in the gym incident was interviewed as part of the investigation of movant's grievance and movant indicated that he had not been threatened since the alleged attack upon him (Ex. 1, pp 4, 15-18). The grievance was denied on February 13, 2023 and movant filed an administrative appeal shortly thereafter, which was within the 90 days that movant had to timely commence an action in the Court of Claims (id. at 1). Thus, the State maintains that movant could have served a notice of intention or served and filed a claim within 90 days of the alleged attack upon him. 
In reply, movant argues that he filed the grievance precisely because of his fear of retaliation from the correction officers that had threatened him and that when the correction officers were not reprimanded after movant's grievance was filed, movant commenced an action in the Court of Claims.
In addressing whether movant has demonstrated a reasonable excuse for his delay, the Court notes that the proposed claim alleges that during movant's walk to the infirmary after the alleged attack, correction officers hurled threats at movant if he reported the incident and that another correction officer jumped in and responded to the nurse's inquiry about movant's injuries by stating that movant was "caught in the crossfire" of a fight in the gym (Ex. A, ¶¶ 24, 25). Additionally, movant's grievance dated February 2, 2023 asserted that movant was threatened with violence by correction officers to stay quiet about the incident (Ex. D). Movant's supporting [*6]affirmation also asserts that he was threatened several times by correction officers to remain quiet about the incident (Ex. F, ¶¶ 20, 40). Accordingly, contrary to the State's arguments, the Court finds that movant has demonstrated a reasonable excuse for his delay based upon his fear of retaliation by the correction officers at Fishkill (see J.R. v State of New York, 75 Misc 3d 1215[A] [Ct Cl 2022] [Movant's fear of retaliation was held to be a reasonable excuse for delay where movant's proposed claim and supporting affidavit indicated that the two correction officers that had allegedly sexually abused movant during her incarceration had contacted movant after she was released on parole and coerced her into continuing a sexual relationship with the correction officers and one of the correction officer's threatened to have movant sent back to prison and to harm her and impliedly her family if she disclosed the sexual relationship]; J.D. v State of New York, 63 Misc 3d 1216[A] [Ct Cl 2019] [Movant's fear of retaliation from the correction officers that were supervising her during her incarceration was held to be compelling and a reasonable excuse for the delay in commencing an action which alleged that during her incarceration, movant was sexually abused on numerous occasions by a number of correction officers]).
In any event, whether movant has established a reasonable excuse for his delay is only one factor to be considered by the Court in addressing movant's late claim application and it is not a determinative factor (see Borawski v State of New York, 128 AD3d 628, 629 [2d Dept 2015]).
While no single factor is determinative, it would be futile to grant a late claim application where the proposed claim is of questionable merit or would be subject to dismissal "even if the other factors in Court of Claims Act § 10 (6) supported the granting of the [application for late claim relief]" (Ortiz v State of New York, 78 AD3d 1314, 1314 [3d Dept 2010]). Unlike a party who has timely filed a claim, a party seeking to file a late claim has the greater burden of demonstrating that the proposed claim appears to be meritorious (see Nyberg v State of New York, 154 Misc 2d 199 [Ct Cl 1992]; Matter of Santana v New York State Thruwav Auth., 92 Misc 2d 1 [Ct Cl 1977]).
In the instant case, the State argues that it would be futile to grant movant's late claim application because the claim has no appearance of merit and the allegations of the proposed claim are not sufficiently specific to meet the jurisdictional pleading requirements of Court of Claims Act § 11 (b).
As to the causes of action alleging a violation of movant's federal and state constitutional rights, the State correctly argues that the Court of Claims does not have jurisdiction over federal constitutional tort claims and that a state constitutional tort claim will not be implied where there is an adequate remedy at law (see Martinez v City of Schenectady, 97 NY2d 78, 83-84 [2001]; Brown v State of New York, 89 NY2d 172, 188 [1996]; Lyles v State of New York, 2 AD3d 694, 696 [2d Dept 2003]). Accordingly, movant's application for late claim relief as to the causes of action alleging a violation of movant's federal and state constitutional rights is DENIED.
Regarding the causes of action alleging that the State is liable for its negligent hiring, training, discipline, and retention of the unnamed correction officers who allegedly attacked movant, threatened movant, interfered with movant's medical assessment and violated movant's unspecified statutory rights, the Court finds that such allegations are vague and conclusory. In that regard, the proposed claim does not allege that State knew or should have known that the [*7]State employees had a propensity for violence or misconduct (see Hicks v Berkshire Farm Ctr. & Servs. for Youth, 123 AD3d 1319,1320 [3d Dept 2014] [To prevail on a claim of negligent training and supervision of an employee, it must be demonstrated that the employer knew or should have known of the employee's propensity for the conduct which caused the injury and that the allegedly deficient training and supervision was a proximate cause of such injury]; Doe v Whitney, 8 AD3d 610, 612 [2d Dept 2004] [There is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee]). The proposed claim also does not allege any facts with sufficient specificity regarding the State's purported negligence or wrongdoing in the State's hiring process, training, discipline and retention of the unnamed correction officers or that such deficiency was a proximate cause of the alleged attack (see Lea v McNulty, 227 AD3d 971, 973 [2d Dept 2024] [An employer's negligence lies in having placed the employee in a position to cause foreseeable harm, which most probably would have not occurred had the employer taken reasonable care in deciding to hire and retain the employee]). Thus, the Court finds that movant has failed to establish an appearance of merit regarding the aforenoted causes of action. Accordingly, movant's application for late claim relief as to the causes of action alleging that the State is liable for its negligent hiring, training, discipline and retention of the unnamed correction officers who allegedly attacked movant, threatened him, interfered with his medical assessment, and violated his unspecified statutory rights, is DENIED. 
As to the causes of action alleging negligent supervision and that the State is vicariously liable for the conduct of the unnamed supervisor who allegedly directed the correction officers to beat movant, the Court finds that these causes of action, by contrast to the aforenoted causes of action, are sufficiently specific and are not patently groundless or frivolous. Specifically, it was alleged that movant saw and heard a correction officer in a white shirt, which shirt color indicated that the correction officer was a supervisor, direct the correction officers to "beat" movant and those correction officers heeded the supervisor's command and beat movant for an additional 15 to 20 seconds (Ex. A, ¶ 22). Further, the Court finds that the record as a whole gives reasonable cause to believe that a valid cause of action exists regarding the State's alleged negligent supervision and vicarious liability for the conduct of the correction officer in the white shirt (see Swart v State of New York, 211 AD3d 881 [2d Dept 2022]; Sands v State of New York, 49 AD3d 444 [1st Dept 2008]). Notably, in addition to movant's supporting affirmation, movant provided a witness statement of George Guadalupe dated February 16, 2023 which asserted that on January 17, 2023, Guadalupe observed a group of correction officers in the gym beat movant while he was handcuffed and then a supervisor told the correction officers to beat movant (Ex. E).
As to the causes of action alleging that the State is liable for the unprovoked, brutal attack and use of excessive force by the unnamed correction officers, the State argues that it would be futile to grant late claim relief as to such causes of action because, under Rivera v State of New York (34 NY3d 383 [2019]), movant cannot recover, as a matter of law. Specifically, the State argues that Rivera held that the State cannot be held vicariously liable for a brutal, unprovoked attack, and the use of excessive force upon an incarcerated individual in a prison by a correction officer on duty because no reasonable factfinder could conclude that the undisputed brutal attack constituted action taken within the scope of employment by an employee of the State (id. at 388).[*8]As set forth below, this Court does not find the State's arguments to be compelling as to the holding in Rivera and its implications on this Court's determination of movant's late claim application. In that regard, the holding in Rivera addressed summary judgment motions and whether the undisputed facts established the State's liability as a matter of law. The case at bar seeks late claim relief and, unlike a summary judgment motion, does not require movant to establish that there are no genuine issues of material fact and that the State is liable as a matter of law.
In Rivera (34 NY3d at 387-388), movant was granted late claim relief by the Court of Claims and thereafter moved for summary judgment arguing that the State should be held liable for an unprovoked, brutal, attack of an incarcerated individual by a correction officer on duty in a prison. The State opposed the motion and cross-moved for summary judgement dismissing the claim arguing that the attack was a clear departure from the correction officer's scope of employment with the State. The Court of Appeals held that, on the undisputed facts, the claim warranted dismissal because, as a matter of law, the correction officer's actions were not within the scope of the correction officer's employment by the State.
Contrary to the arguments advanced by the State, the Court of Appeals did not hold that the State can never be held liable for the use of force upon an incarcerated individual by a correction officer while on duty in a prison. Rather, the Court of Appeals expressly stated that,"[s]uch conduct will not fall outside the scope of employment merely because it violates department rules or policies or crosses the line of sanctioned conduct" (id. at 391).
The Court of Appeals explained, that in determining respondeat superior liability, an employee's deviation from directions or governing standards is "only one consideration in the analysis" to be considered along with the other factors of a multi-factored test to be utilized by the factfinder in weighing and assessing whether an employee's conduct falls within the scope of employment, as set forth in Riviello v Waldron (47 NY2d 297 [1979]). Those factors include: "the connection between the time, place and occasion for the act; the history of the relationship between the employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated" (id. at 303). Riviello (47 NY2d) also stated that, "it bears noting that for an employee to be regarded as acting within the scope of [ ] employment, the employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected" (id. at 304).
Additionally, the Court of Appeals in Rivera (34 NY3d) acknowledged that in cases involving occupations for which some physical contact with others is permissible or expected, it may be difficult to determine whether the challenged conduct falls outside the boundaries of the employment relationship such that the employee should be solely responsible for such tortious conduct (id. at 390). In such cases, the Court of Appeals noted that the question may become "one of degree and not kind" and that the issue of vicarious liability may be appropriately left for the factfinder (id.). 
Notably, after Rivera (34 NY3d), the State has been found to be vicariously liable for the use of excessive force imposed upon an incarcerated individual in a prison by a correction officer who was on duty (see Galloway v State of New York, 212 AD3d 965, 968-969 [3d Dept 2023] [*9][The State was held liable for the use of excessive force by a correction officer where the Court found that the correction officer was acting within the scope of his employment in directing claimant to comply with a pat-frisk and that the evidence of reports of inappropriate contact by the correction officer with the claimant prior to the incident led the Court to conclude that it was "clearly foreseeable that an intense encounter could result during further interactions between (the correction officer) and claimant in the context of normal employment-related activities in the prison"]).
In the instant case, as noted above, this Court is presented with an application for late claim relief. Therefore, to prevail on the motion for late claim relief, movant is required to demonstrate, among other factors, that the causes of action alleged have an appearance of merit, that is, that they are not patently groundless or frivolous and that the record as a whole gives reasonable cause to believe that a valid cause of action exists (see Swart, 211 AD3d; Sands, 49 AD3d). The Court finds that, upon review of the record as a whole, movant has sufficiently established an appearance of merit of the causes of action alleging that the State is vicariously liable for the conduct of the unnamed correction officers who allegedly brutally attacked movant, without provocation, and used excessive force on January 17, 2023.
With regard to the causes of action alleging negligent supervision and that the State is vicariously liable for the conduct of the unnamed supervisor who allegedly directed the unnamed correction officers to beat movant and for the conduct of those correction officers who allegedly attacked movant on January 17, 2023 and used excessive force upon movant, the Court must also consider the other relevant factors set forth in Court of Claims Act § 10 (6).
The factors of whether the State had notice of the essential facts constituting the claim, whether the State had an opportunity to investigate the circumstances underlying the claim, and whether the failure to file or serve a timely claim or serve a timely notice of intention resulted in substantial prejudice to the State, are often considered together. The Court finds that movant has met the initial burden of showing that the State has not been substantially prejudiced by the delayed notice because the State had an adequate opportunity to conduct an investigation into the alleged attack, the use of excessive force by the correction officers, and the lack of appropriate supervision of the correction officers, as evidenced by movant's supporting exhibits (Exs. B-D) (see Matter of Newcomb v Middle Country Cent. Sch. Dist., 28 NY3d 455, 466 [2016]; Schnier v New York State Thruway Auth., 205 AD3d 958 [2d Dept 2022]). Specifically, the to-from memorandum dated January 17, 2023, which identified movant as a possible participant in the incident involving the metal chairs in the gym on January 17, 2023, referred to the subsequent investigation of the incident and documented movant's injuries, the Unusual Incident Report dated March 7, 2023 detailed the same, and movant's grievance dated February 2, 2023 alerted the State that movant was beaten by a "group of correction officers and supervisors," was threatened to stay quiet about the attack upon him, and movant's medical report vanished (Exs. B, C, D). 
The Court further finds that since movant's initial showing on the issue of substantial prejudice has been satisfied, the State was required to respond with a particularized showing that it would be substantially prejudiced if movant was granted late claim relief (Matter of Newcomb, 28 NY3d at 467). Notably, a finding that the State would be substantially prejudiced cannot be based solely on speculation, inference or the mere passage of time, absent some showing of [*10]actual injury to the State (id. at 465-466; Matter of Sarkisian Bros. v State Div. of Human Rights, 48 NY2d 816, 818 [1979]). The State's opposition to movant's late claim application failed to set forth any particularized showing that it would be substantially prejudiced if movant's late claim application was granted. Accordingly, the Court finds that the State did not refute movant's initial showing of a lack of substantial prejudice to the State. Thus, the factors regarding notice, an opportunity to timely investigate, and substantial prejudice are found to weigh in favor of granting movant's late claim application as to the causes of action alleging negligent supervision and that the State is vicariously liable for the conduct of the unnamed supervisor who allegedly directed the unnamed correction officers to beat movant and for the conduct of those correction officers who allegedly attacked movant on January 17, 2023 and used excessive force upon movant.
Finally, as to the factor of whether movant has another available remedy, the Court finds that movant may have an alternative remedy available in an action against the individual correction officers and the supervisor in New York State Supreme Court and a federal court action brought pursuant to 42 USC § 1983.
In sum, upon consideration of all the relevant factors, movant's late claim application as to the causes of action alleging negligent supervision and that the State is vicariously liable for the conduct of the unnamed supervisor who allegedly directed the unnamed correction officers to beat movant and for the conduct of those correction officers who allegedly brutally attacked movant, without provocation, and used excessive force on January 17, 2023, is GRANTED and movant's late claim application as to all other allegations of the proposed claim is DENIED.[FN2]
 Therefore, within forty-five (45) days of the filing date of this Decision and Order, movant shall file with the Clerk of the Court a Claim against the State of New York, limited to the causes of action alleging negligent supervision and that the State is vicariously liable for the conduct of the unnamed supervisor who allegedly directed the unnamed correction officers to beat movant and for the conduct of those correction officers who allegedly brutally attacked movant, without provocation, and used excessive force on January 17, 2023, and shall serve a copy of said Claim upon the Office of the Attorney General either personally or by certified mail, return receipt requested.

Footnotes

Footnote 1:Movant's counsel affirms that the date indicated on movant's affirmation as January 17, 2023 was a typographical error and that the correct date is January 17, 2024 (Attorney's Affirmation, ¶ 8, fn 1).

Footnote 2:It is noted that while movant has been granted late claim relief based upon, inter alia, a showing of an appearance of merit of the aforenoted causes of action, to prevail upon said causes of action at trial, movant must establish the facts and the elements of those causes of action by a preponderance of the credible evidence for the Court to find the State liable.